Harry B. Spring, Plaintiff, *v.* Howard F. Moncrieff et al., Defendants.

Supreme Court, Special Term, New York County, August 31, 1955.

*Robert L. Augenblick* for Howard F. Moncrieff, defendant.

*Hyman D. Lehrich, Kenneth J. Mullane* and *Robert Bloom* for Swan-Finch Oil Corporation, defendant.

*Leo Brady* and *Leroy C. Curtis* for plaintiff.

MATTHEW M. LEVY, J. Each defendant separately moves (with supporting affidavits) to dismiss both causes of action pleaded in the complaint, pursuant to subdivision 7 of rule 107 of the Rules of Civil Practice, on the ground that the alleged agreement there set forth is unenforcible under the Statute of Frauds; and to dismiss the second cause of action, pursuant to subdivision 4 of rule 106, on the ground that this count fails on its face to allege facts sufficient to constitute a cause of action. The plaintiff relies upon the sufficiency of the second count as pleaded; and, in opposition to the motion seeking dismissal because the agreement is allegedly not properly evidenced by a writing, the plaintiff has submitted counter-affidavits and documents, and has also applied for a subpœna duces tecum, directed to the corporate defendant to compel the production of certain books, papers and records. The motions and application were heard and considered together, and will be disposed of in this one memorandum.

In the first cause of action it is alleged in substance that the plaintiff, " at the special instance and request " of the

defendants and one Yaeger, performed certain services for the defendants, consisting, among other things, of appraising the financial position of, and the stockholding interests in, the corporate defendant (hereinafter sometimes referred to as Swan-Finch), introducing the defendants and Yaeger to Pennsylvania Coal & Coke Co., later known as Penn-Texas Corporation (hereinafter sometimes referred to as Penn-Tex), consulting and advising with the defendants, Yaeger and the management of Penn-Tex concerning the exchange of stock of the latter for the stock or assets of Swan-Finch; securing for the defendants and Yaeger an offer from Penn-Tex for the exchange at a certain ratio of the corporate stock of that company for the stock of Swan-Finch, consulting and advising with the defendants and Yaeger concerning such offer, attending meetings and conferences and guiding the defendants and Yaeger in the negotiations with respect to the proposed exchange. It is then alleged that these services were of the " agreed and reasonable value " of $40,000, the sum demanded and sued for.

The plaintiff alleges in the second cause of action that " it was agreed between the plaintiff on the one hand and the defendants and Yaeger on the other hand, that for and in consideration of the plaintiff's services in connection with  *  *  * the purchase by Penn-Tex of the assets of the corporate defendant, the defendants and Yaeger would cause the corporate defendant to include in the agreement with Penn-Tex a provision for the benefit of the plaintiff [as to the plaintiff's compensation], and it was further agreed that the defendant Moncrieff and the said Yaeger would vote the controlling block of stock owned and controlled by them in favor of said acquisition by Penn-Tex." The complaint goes on further to allege that, thereafter, Swan-Finch and Penn-Tex entered into an agreement " for the sale by the corporate defendant of all of its assets for [a certain number of] shares of the capital stock of Penn-Tex," which agreement was " subject to the approval of the stockholders of the corporate defendant," and which agreement " contained a provision for the delivery to the plaintiff in compensation for his services as agent, broker, finder or intermediary for the corporate defendant of 2,000 shares of the capital stock of " Penn-Tex. These shares are alleged to have been and to be of the fair market value of from approximately $30,000 to $40,000. It is then alleged that thereafter the defendant Moncrieff sold his block of stock to a third party, thereby rendering impossible the consummation of the agreement between Swan-Finch and Penn-Tex, and thus prevented

the plaintiff from receiving the commission agreed upon, although the plaintiff performed the terms and conditions of the agreement on his part to be performed. The plaintiff's damages are claimed to be $40,000, which sum was demanded and is sued for.

The particular Statute of Frauds invoked by the defendants as against both causes of action was enacted in 1949 (L. 1949, ch. 203) and, incorporated in subdivision 10 of section 31 of the Personal Property Law, reads (insofar as relevant to the instant issues) as follows:

" Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking   *   *   *

" Is a contract to pay compensation for services rendered [by one like the plaintiff, not ' an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman '] in negotiating   *   *   *   the purchase, sale, exchange *   *   *   of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation ".

The first cause of action, as pleaded in the complaint, is a suit in *quantum meruit* to recover the reasonable value of services rendered by the plaintiff at the defendants' request under circumstances which imply an obligation on their part to pay therefor — independent of any express " agreement, promise or undertaking " on the part of the defendants that they will pay. Although it is alleged in the first count that those services were of the " agreed " price and reasonable value of $40,000 — thereby seemingly indicating that an express contract as to the amount of compensation was entered into — the first cause of action in reality is one to recover the " reasonable value " of the services rendered, and the word " agreed " may be considered as surplusage. It does not change the nature of the action and may be disregarded (*Keister* v. *Rankin,* 29 App. Div. 539, appeal dismissed 156 N. Y. 695).

Furthermore, broadly and liberally construed in its favor (as is consonant with a well-established rule of pleading analysis when the issue is the sufficiency of the complaint as a matter of law — *Bentrovato* v. *Crinnion,* 206 Misc. 648, 654), the plaintiff's allegation concerning his securing an offer for the exchange of the capital stock, as distinct from other services rendered by him, is not of necessity an essential element of his claim for compensation for services performed. His labors may not

have been as productive as claimed; he would nevertheless be entitled to some compensation based upon the reasonable value of the work done and results achieved. If so, the reference to the services rendered by the plaintiff in the negotiation and procurement of such offer does not necessarily call into operation the ban of the Statute of Frauds as against all of the services performed by him.

While it may be that the express contract *in toto,* sued upon in the second count, is vulnerable by reason of the Statute of Frauds, that issue does not here arise, for the plaintiff in the first cause of action does not (as it is now alleged) refer to or rely upon that contract (see *Parver* v. *Matthews-Kadetsky Co.,* 242 App. Div. 1). Quite obviously, each cause of action set forth in the complaint is to be treated separately in order to ascertain whether it stands or falls (cf. *Harmon* v. *Alfred Peats Co.,* 243 N. Y. 473, 476). Indeed, contrary to the defendants' contention, the '' plaintiff may join in the same complaint two or more independent or alternate causes of action, regardless of consistency, whether they are such as were formerly denominated legal or equitable, provided that upon the application of any party the court may in its discretion direct a severance of the action or separate trials whenever required in the interests of justice '' (Civ. Prac. Act, § 258).

In my view, if there be in fact an express contract, unenforcible though it may be by virtue of the absence of a writing, the plaintiff should not be precluded from suing in *quantum meruit* for the reasonable value of services rendered at the defendants' request. The statute was enacted to prevent the perpetration of a fraud upon a defendant, not to facilitate his commission of one upon the plaintiff. Because it may work an injustice, the statute should not be extended by construction beyond the natural import of its language. By its express terms, the statute seems to refer not to obligations implied in law but to express contracts. And — since there is no indication in the section that before one may recover in *quantum meruit* for the reasonable value of work done by him, the request for such work must be in written form — I do not think that I should jump in where the Legislature failed to tread.

The decision in *Graymount* v. *Schlemmer* (204 Misc. 667), relied upon by the defendants, is not persuasive to the contrary (see *Schrier* v. *Kelloggs Pure Foods,* 205 Misc. 767). While, in the *Graymount* case, it was held at Special Term that where the agreement was barred by subdivision 10 of section 31 of

the Personal Property Law, the plaintiff could not sue in *quantum meruit,* the affirmance of the decision (283 App. Div. 859) was not on that ground, but on the basis that, in opposing the defendants' motion for summary judgment, the plaintiff had failed to present sufficient triable issues of fact to establish his cause of action. And although it may be (as urged by the defendants) that all the record facts in *Gibson* v. *Archer Productions* (281 App. Div. 661) might justify the thought that that case is not on all fours with the instant one, it is significant that in its opinion the Appellate Division said quite broadly: '' Though the Statute of Frauds [Personal Property Law, § 31, subds. 1, 10] would apply to this suit if it were brought upon an express contract, it would not constitute a defense to an action, such as this, brought in *quantum meruit* to recover for services rendered. Plaintiff may be entitled to recover reasonable compensation for services actually rendered by him.'' The court had a patent opportunity, when the *Graymount* appeal came before it (283 App. Div. 859, *supra*) to limit or to modify what was thus stated in the *Gibson* case (281 App. Div. 661, *supra*), and when it did not do so, I deem it appropriate to note that the *Gibson* decision is controlling precedent. And there is nothing in the discussion of the Law Revision Commission to justify a contrary ruling (1949 Report of N. Y. Law Revision Commission, p. 613).

I hold, therefore, that the attack by the defendants upon the first cause of action is untenable, and the motion of each defendant to dismiss the first count as banned by the Statute of Frauds is denied. As to the second cause of action, the situation is quite different.

It will be recalled that the second cause of action is based on an alleged agreement, by the specific terms of which — in consideration of the plaintiff's services in connection with the acquisition or purchase by Penn-Tex of the assets of Swan-Finch — the defendants and Yaeger undertook to cause to be included in the agreement with Penn-Tex a provision requiring payment to the plaintiff of 2,000 shares of Penr-Tex stock, and whereunder the defendant Moncrieff and Yaeger agreed that they would vote the controlling block of stock owned by them in favor of the acquisition by Penn-Tex of the Swan-Finch assets or stock. It is further alleged that this contract for the sale of all of Swan-Finch's corporate assets in exchange for Penn-Tex stock was subject to the approval of the Swan-Finch stockholders. It is then alleged that the defendant Moncrieff

rendered impossible the consummation of the agreement between Swan-Finch and Penn-Tex by the sale of the Moncrieff stock to another.

Quite obviously, the second cause of action expressly relates to agreed specific compensation to the plaintiff for services rendered by him in negotiating the purchase, sale or exchange of a business, a business opportunity, or an interest therein, or of a majority of the voting stock interest in a corporation. Such an agreement is plainly void unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or by his lawful agent (Personal Property Law, § 31, subd. 10). Each defendant, with supporting affidavits, invokes the ban of the statute; and each also seeks dismissal of the second cause of action for alleged insufficiency on its face (rule 106, subd. 4). Affidavits, pro and con, cannot, of course, be considered on a motion in pursuance of rule 106; and I shall, therefore, first pass upon the legal sufficiency of the second cause of action on its face, with respect to each moving party — the corporate defendant and the individual defendant.

The corporate defendant seeks dismissal upon the ground that there is nothing in the complaint to show that this defendant breached its contract — assuming one was made by it, and assuming too that it is not voided by the Statute of Frauds. I agree. The contract allegedly entered into by Swan-Finch for the sale of all of its assets to Penn-Tex was expressly in fact and necessarily in law (Stock Corporation Law, § 20), subject to the approval of the Swan-Finch stockholders; and there is no claim in the complaint that the stockholders had approved the agreement. Nor is there any allegation that the corporate defendant acted in any way to vitiate the agreement or to render it abortive. The act of Moncrieff in disposing of his stock is not alleged to have been the act of the defendant corporation. For aught that appears, Swan-Finch had no control over the manner in which Moncrieff could vote his stock or over any disposition which he might personally desire to make of his holdings in the corporation. Since I have found this cause of action insufficient on its face with respect to the defendant Swan-Finch, it is not presently necessary to pass upon the other branch of the motion with respect to this defendant — that is, whether its agreement, as alleged, is unenforcible under the Statute of Frauds.

Now, as to the sufficiency of the second count as against the defendant Moncrieff. I find here that the complaint, on its face,

does set forth sufficient facts to establish the existence of a cause of action against this defendant. It is alleged that Moncrieff and Yaeger agreed that they "would vote the controlling block of stock owned and controlled by them in favor of the said acquisition by Penn-Tex" of the Swan-Finch assets, by way of an agreement which would provide, among other things, for the plaintiff's specific compensation. That is a sufficient allegation of the undertaking by Moncrieff. The further allegation that, by the sale of his Swan-Finch stock, Moncrieff prevented the consummation of the agreement is sufficient to plead a breach thereof, for by this sale he made it impossible for him to perform his own promise, as alleged. This is not, as asserted by Moncrieff, a case of a corporate officer inducing the corporation to breach its contract but of an individual who by action distinct from his obligations as an officer had rendered performance of his own contract impossible by destroying his ability to perform the conditions he himself undertook personally to perform (*Amies* v. *Wesnofske,* 255 N. Y. 156).

Since I have found that the second count is adequate on its face *vis-a-vis* the defendant Moncrieff, I must now consider whether it is impervious to his attack based upon the Statute of Frauds. I have concluded, from all the proof before me, that this cause of action is unenforcible against the individual defendant in that there is nothing to show that he executed the agreement or a note or memorandum of it in writing, either individually or by his duly authorized agent. In arriving at this determination, I have carefully studied all of the voluminous papers submitted, for I recognize that it is not necessary — in order to satisfy the statute — that the note or memorandum include every detail of the agreement, since that may be supplied and the note or memorandum supplemented by other papers or documents (*De Vito* v. *City of Mechanicville,* 251 App. Div. 514; *Tioga Co. Gen. Hosp.* v. *Tidd,* 164 Misc. 273); and I recognize, too, that although the writings may not consist of a single memorandum, they may, by putting all of them together, supply all of the essential terms of the agreement (*Crabtree* v. *Elizabeth Arden Sales Corp.,* 305 N. Y. 48; *Duncan* v. *Wohl, South & Co.,* 201 App. Div. 737; *Papaioannou* v. *Britz,* 285 App. Div. 596).

The defects in the plaintiff's position in respect of the defendant Moncrieff are two. Firstly, the plaintiff has produced nothing tending to show that Moncrieff signed anything in his individual capacity or that in these negotiations he was acting in any way other than in his capacity as an officer of the cor-

porate defendant. Outside of the bare allegation by the plaintiff (who is not shown to have knowledge) that the defendant corporation or the secretary of that company acted as the agent of the defendant Moncrieff personally, there is nothing to support the claim, and the barren assertion is quite inadequate on a motion such as this. The minutes of the corporation, the correspondence, the proposed agreement, the other papers, not only do not establish but they do not even indicate that the corporation or its secretary acted as the agent or in behalf of the defendant Moncrieff. Secondly (if it be assumed that the corporation or its secretary was acting as agent for the defendant Moncrieff), neither the Penn-Tex proposal nor the letters nor the corporate minutes nor any other writing contains any reference to any undertaking on the part of Moncrieff to vote his stock in favor of the acceptance of the proposal. Nor, indeed, does the plaintiff assert that any agreement or note or memorandum exists to establish that such a promise was made. Accordingly, the writings do not evidence the existence of any agreement between the plaintiff and the defendant Moncrieff, and necessarily there is nothing to establish an enforcible contract in writing between them. It is quite obvious, therefore, that the agreement sued on by the plaintiff differs from the memorandum relied upon by him to satisfy the Statute of Frauds — and in a material respect insofar as it relates to the agreement pleaded against the defendant Moncrieff. Consequently, the Statute of Frauds is not satisfied and this cause of action must be dismissed as against Moncrieff (*Saff Textile Corp.* v. *Sutton,* 280 App. Div. 597).

The final matter for consideration is the plaintiff's application for leave to issue a subpœna duces tecum directed to the defendant Swan-Finch to produce — in short — every scrap of paper the corporation has, issued and received, externally and internally, having any reference to the Penn-Tex transaction from its inception to the present time, as well as to the disposition of the Moncrieff stock, etc. In reversing an order of Special Term, and vacating an identical subpœna issued by plaintiff's counsel and returnable when the motions-in-chief were first scheduled to be heard, the Appellate Division — pointing out that the subpœna was " broad and all-encompassing " — held that " the propriety and necessity of issuing such a subpœna duces tecum should rest in the first instance in the sound discretion of the justice hearing the motion ". (*Spring* v. *Moncrieff,* 285 App. Div. 1127, motion for reargument denied 286 App. Div. 807.)

The plaintiff's purpose in asking for the subpœna was to endeavor to obtain and present documentary proof — assertedly or hopefully existing — in opposition to that branch of the defendants' motions which invoked the Statute of Frauds. I have held that the first cause of action in *quantum meruit* was not subject to that ban; the subpœna is, therefore, unnecessary in support of plaintiff's complaint there. I have held that the second cause of action is insufficient on its face as against the corporate defendant; the subpœna will, therefore, not be helpful to the plaintiff there. I have held that, while the second count states a cause of action against the individual defendant, the Statute of Frauds is a bar; the subpœna's probable proper function would be here and here alone.

Were there any indication by the plaintiff that there was some writing involving Moncrieff personally, then I should certainly permit the issuance of another subpœna duces tecum calling for the production of " some of the many papers demanded " (285 App. Div. 1127). But the plaintiff's claim against Moncrieff is so devoid of anything more than a hope and a wish, that " the proper disposition " of the motions does not " require the issuance of another subpœna duces tecum " (285 App. Div. 1127). The plaintiff has presented nothing beyond a mere claim that Moncrieff or an alleged agent signed a writing; and the plaintiff has not even made an assertion that Moncrieff or his alleged agent signed a memorandum embracing an agreement on Moncrieff's part to vote his shares in favor of the Penn-Tex proposal. In the circumstances, there is nothing concrete or tangible to justify the issuance of the subpœna or the present denial of the defendant Moncrieff's motion to dismiss (cf. *Bartels* v. *Rubel Corp.*, 205 Misc. 673, 675–676).

Settle orders accordingly.