Abraham N. Geller, J.
This action, a consolidation of two actions instituted, respectively, on or about October 10, 1953 and on or about July 13, 1954, was brought by the plaintiffs, Della M. Grattan, Violet Grattan, Gloria Grattan and Irene Grattan, doing business as D. M. Grattan Co. (hereinafter some *864 times referred to as “ Grattan ”) against the defendants Societa Per Azzioni Cotonificio Cantoni (hereinafter sometimes referred to as “Cantoni”) and Amity Silk Corporation (hereinafter sometimes referred to as “Amity”) to recover commissions allegedly owed Grattan pursuant to oral contracts and damages claimed to have resulted from conspiracy and from tortious interference with certain contractual relationships. Although the actions were consolidated by order made at Special Term in November, 1954, the pleadings remain separate and have not been consolidated.
Grattan seeks a recovery of approximately $345,000 as against Amity, and a recovery of $54,000 as against Cantoni. In addition to interposing numerous defenses, Amity has asserted counterclaims on which it sought recovery against Grattan of approximately $1,900,000, and Cantoni has asserted counterclaims on which it sought recovery against Grattan of $8,500.
The trial of this action was originally commenced before another Justice of this court and a jury. On October 24, 1955, after approximately three weeks of trial, the Trial Justice was compelled to declare a mistrial due to the illness of a juror. The second trial commenced on November 9, 1955 before the undersigned and a jury. After 12 trial days, the parties waived a jury trial. The action then proceeded as a nonjury case and the trial was concluded on December 16,1955. As the foregoing brief recital suggests, the record of testimony and exhibits is voluminous. In addition, the court has had the benefit of comprehensive trial briefs and posttrial briefs, supplemented by the court’s independent research which was made all the more necessary because of the view that this court has taken of the action at bar.
Much of the material testimony given on the trial is in irreconcilable conflict. However, there is in evidence a vast number of contemporaneous writings, such as letters, telegrams and cables, which, in certain material instances, are markedly at variance with much of the oral testimony. In these circumstances, it has been appropriate for the court to bear in mind the admonition of the Appellate Division of this department that ‘‘ Written evidence in such a case is of course entitled to much greater weight than testimony coming from the lips of an interested witness ”. (Susquehanna Silk Mills v. Jacobson, 185 App. Div. 378, 383.)
Because of the voluminous factual record in this case, the court believes that it would make for a more orderly presentation of its views and findings were it first to consider the commission causes of action arising from Amity’s purchases of *865 goods from Cantoni. Out of the facts underlying these causes of action will develop the relationships among the three parties to this lawsuit and the background of this litigation. After disposition of the commission causes of action, the court will state its determinations with respect to the defenses and counterclaims.
In the first suit, which was brought by Grattan solely against Amity, eight of the separate causes of action (consolidated on the trial into a single cause of action) seek recovery of commissions on purchases of goods made up to about August, 1953 by Amity from Cantoni, an Italian manufacturing concern. These causes of action will hereafter be referred to as the “ Amity commission claim ’’.
In the second and subsequent suit, which was brought by Grattan against both Cantoni and Amity, Grattan, in the first cause of action pleaded solely against Cantoni, seeks recovery of commissions on sales of goods made for the 1954 season by Cantoni to Amity. This cause of action will hereafter be referred to as the “ Cantoni commission claim ”.
At all the times material to this action, Cantoni was an Italian firm which manufactured, at its mill in Italy, textiles, including a fabric called velveteen in certain qualities, and Amity was an American firm engaged principally in the business of purchasing and selling fabrics and textiles. Grattan was a firm engaged in public relations and in other enterprises. There is no question about the fact that Grattan was the intermediary between Cantoni and Amity, that Grattan introduced them to each other, and that the business relations between Cantoni and Amity originated through Grattan. Although the parties are not entirely in agreement about it, the court is satisfied from the evidence that Grattan, with the knowledge and consent of Cantoni and Amity, was the agent for each and both of them and that Grattan, at least until the time in August, 1953 when Amity discharged it and terminated its services, received, solely from Amity, a commission of 5% on sales of goods made by Cantoni to Amity for a number of years beginning in 1950.
The essential issues, so far as the Amity and Cantoni commission claims are concerned, involve the nature and duration of the contractual relationships among the parties and whether the obligation to pay to Grattan such commissions to which it may have been entitled was that of Cantoni or Amity or both of them.
The Amity commission claim, as pleaded, alleges that, prior to December, 1952 Amity employed Grattan as purchasing agent to purchase for it materials from manufacturing concerns in *866 Italy and agreed to pay Grattan a 5% commission. Grattan then alleges eight specific purchases by Amity from Cantoni upon which Grattan claims a balance of commissions amounting to $37,227.72.
The Cantoni commission claim, as pleaded, alleges that in 1949 Cantoni employed Grattan as United States selling agent for Cantoni’s textiles and agreed to pay Grattan a 5% commission. Grattan alleges that it procured Amity as a purchaser of Cantoni’s textiles, that in consideration of Cantoni’s downward adjustment of its prices, Grattan’s commissions were to be paid by Amity, that on or about August 7, 1953 Amity purported to sever its relations with Grattan, that Cantoni, upon being notified of such severance of relations, agreed to pay the 5% commission to Grattan upon all textiles ordered by Amity from Cantoni for the 1954 season, that Amity ordered 1954 merchandise from Cantoni amounting to more than $1,500,000 and that Grattan is entitled to receive 5% thereof from Cantoni.
In neither of these commission claims, as originally pleaded, did Grattan allege any facts showing, or from which it could be inferred, that the oral employment contracts pleaded by it were to be, or were capable of being, performed within one year. Clearly, these commission claims, as thus originally pleaded and predicated upon alleged oral contracts, would be unenforcible under the Statute of Frauds, which was asserted by both defendants. (Personal Property Law, § 31, subd. 1; Cohen v. Bartgis Bros. Co., 264 App. Div. 260, affd. 289 N. Y. 846; Martocci v. Greater New York Brewery, 301 N. Y. 57; Nat Nal Service Stations v. Wolf, 304 N. Y. 332; Gaylor Petroleum Sales Corp. v. Gulf Oil Corp., N. Y. L. J., March 28, 1956, p. 5, col. 8; cf. Zupan v. Blumberg, 1 A D 2d 203.)
However, on trial, Grattan amended its complaints to allege, and offered oral testimony in an effort to show, what the court conceives to be a somewhat different set of facts. To support these commission claims, Grattan now asserts an oral tripartite agreement made in January, 1950 whereby (a) Grattan was to receive a 5% commission on sales by Cantoni to Amity; (b) Cantoni agreed to pay the 5%; (c) the contract would run from year to year commencing October 1 in each year and ending September 30 in each year and was terminable by any of the parties thereto at the end of any such year; (d) Cantoni was to sell and invoice its velveteens to Amity at a net figure without including any amount therein to allow for Grattan’s commissions; and (e) Amity was to pay the entire commission directly to Grattan in New York. I will assume for the purposes of this *867 opinion that such an oral contract from year to year, terminable at the end of any year by any of the contracting parties, would not be barred by the Statute of Frauds. (See Blake v. Voigt, 134 N. Y. 69; Spector Co. v. Serutan Co., 60 N. Y. S. 2d 212, affd. 270 App. Div. 993; One Television v. One Fifth Ave. Operating Corp., 206 Mise. 1090.)
It would serve no useful purpose, in the court’s opinion, to review or analyze the evidence or the extensive arguments of counsel on the issue of whether or not Grattan has established the oral year-to-year contract on which it now relies. The claimed terminable year-to-year contract is bottomed principally on the oral testimony of Della M. Grattan, a partner of the Grattan firm. Her testimony consisted in large part of alleged conversations with a deceased executive of the Cantoni firm. I find Miss Grattan’s testimony in this regard to be inherently improbable and without support in the evidence. Grattan offered two disinterested witnesses to support the alleged year-to-year contract but on careful examination of the testimony given by these witnesses I find that it does not corroborate the claim that there was such a contract. In my opinion, Grattan’s belated claim to such a year-to-year contract was contradicted by the original complaints and bills of particulars, by the prior inconsistent testimony given by Grattan on various occasions and by the credible proof in the case, including the numerous letters and writings in evidence. The court finds and decides that Grattan has failed to establish by a fair preponderance of the credible evidence that such a year-to-year contract existed or was made with either or both of the defendants. It follows, therefore, that the causes of action here described as the Amity commission claim and the Cantoni commission claim, as amended by Grattan on the trial, must be and they are dismissed.
Grattan’s counsel has emphasized that the business relationship between Cantoni and Amity, initiated by Grattan, still continues. Whatever value this fact may have as atmosphere, it cannot avail Grattan in this action, inasmuch as it has failed to prove the contract it has asserted.
Since parties and their counsel have the right, with which courts do not usually interfere, to make and present the issues in their own way, the court would not normally be concerned with the repercussions of its finding that Grattan has failed to establish the contract ultimately relied upon by it as the foundation for its Amity and Cantoni commission claims. Grattan has not, in its briefs or otherwise, requested (in the event its alleged contract with Cantoni and Amity be not established) court pass upon its right to any recovery in this action *868 in quantum meruit so far as the Amity and Cantoni commission claims are concerned. And, of course, no such request has been made by either of the defendants. However, because of the full record and unusual situation here presented, the court has felt obliged to consider these matters.
At the time of the termination of Grattan’s services in August, 1953 unpaid commissions, at the rate of 5% on orders placed by Amity with Cantoni and filled, amounted to $19,883.07. There is no doubt about the fact that Cantoni’s prices to Amity were fixed so that they would be net to Cantoni and that the prices so fixed contemplated Amity’s payment of a 5% commission to Grattan. Similarly, in August, 1953, at the time of the termination by Amity of Grattan’s services, orders theretofore placed by Amity with Cantoni were outstanding (with little or nothing of consequence further to be done by Grattan thereon), which were subsequently filled, at prices which contemplated Amity’s payment to Grattan of a 5% commission amounting to $17,197.79. The dismissal, therefore, of the Amity and Cantoni commission claims, as pleaded and tried, would result in a windfall to Amity, which would, at first glance, appear to be redressable, if at all, only in a subsequent action.
Perhaps this court’s dismissal on the merits of the Amity and Cantoni commission claims because of Grattan’s failure to establish the contracts relied on by it would not be res judicata in any subsequent action which may be brought by Grattan against Amity to recover in quantum meruit (see Smith v. Kirkpatrick, 305 N. Y. 66; Walar v. Rechnitz, 126 App. Div. 424), and the judgment herein could provide that such dismissal be without prejudice to such a subsequent action. However, after careful deliberation, I have come to the conclusion that the rights of the parties can and should, in the interests of justice, be determined in this litigation.
It is settled law that where the complaint pleads a special contract which the plaintiff fails to establish on trial, the plaintiff is entitled in the same action to recover upon a quantum meruit if he has in fact rendered services. (Smith v. Kirkpatrick, 305 N. Y. 66, 73, supra; Bialostok v. Wolfer, 191 Misc. 385; McKeon v. Van Slyck, 223 N. Y. 392, 399; Sturtevant v. Fiss, Doerr & Carroll Horse Co., 173 App. Div. 113; Rodger v. Emigrant Ind. Sav. Bank, 258 App. Div. 614; Sussdorff v. Schmidt, 55 N. Y. 319, 324; Lockhart v. Hamlin, 190 N. Y. 132, 137; Baumann v. Manhattan Consumers’ Brewing Co., 97 App. Div. 470.)
Judge Froessel tersely stated the rule in Bialostok v. Wolfer (191 Misc. 385, 387, supra) as follows: “ The law is well settled that even where an action is brought upon a special contract of *869 employment, and said special promise is not established, a recovery may be had upon a quantum meruit where the evidence does in fact show the rendition of services under circumstances which imply an agreement to pay therefor.”
In Rodger v. Emigrant Ind. Sav. Bank (258 App. Div. 614, 615, supra) the court stated: “It has been the practice long established to plead in one count both the agreed compensation and the reasonable value of the services rendered; and recovery on the latter theory has been permitted even where only the agreed remuneration has been pleaded.” (Emphasis added.)
In Smith v. Kirkpatrick (305 N. Y. 66, supra) there was a prior action between the parties in which the complaint was dismissed on motion under the Statute of Frauds. An amended complaint was thereafter served on the theory of express contract, no recovery in quantum meruit being sought. On trial, the amended complaint was dismissed upon the ground that the plaintiff had failed to establish the express contract he alleged and the Trial Justice pointed out that “ the bar of the statute of frauds and the failure on the part of the plaintiff to proceed on the theory of quantum meruit have given to the defendant a windfall which in business morals and good conscience he is not entitled to,” Another action was then instituted seeking recovery in quantum meruit and the defendant contended that the dismissal of the amended complaint in the prior action was res judicata. The Court of Appeals held that it was not. In so doing, however, the court pointed out (p. 73): “ In this State, where a litigant fails to establish the right to recover upon an express contract he may, in the same action, recover in quantum meruit. * * * If warranted by the pleadings and proof, the case may be submitted to a jury on both theories and an election need not be made.”
Even if the Amity and Cantoni commission claims as originally pleaded had not been amended and hence would be barred by the Statute of Frauds, Grattan could nevertheless recover in quantum meruit in the same action. (Harmon v. Peats Co., 243 N. Y. 473; Parver v. Matthews-Kadetsky Co., 242 App. Div. 1; Elsfelder v. Cournand, 270 App. Div. 162; Gibson v. Archer Productions, 281 App. Div. 661; Spring v. Moncrieff, 208 Misc. 671; Potter v. Emerol Mfg. Co., 275 App. Div. 265; Black v. Fisher, 145 N. Y. S. 2d 142; editorials, N. Y. L. J., Nov. 22,1955, p. 4, col. 1; Dec. 28,1955, p. 4, col. 1.)
It is to be noted that the motion of Grattan’s counsel at the trial to amend the pleadings to conform to the proof was granted. A full and complete record has been made. And I can perceive no element of surprise on the part of or prejudice to *870 the defendant Amity which could preclude me from rendering, and I consider that the authorities warrant me in rendering, such judgment in quantum meruit as the evidence supports, despite the state of the pleadings before they were conformed to the proof. (Civ. Prac. Act, § 434; Rules Civ. Prac., rule 166; Embien Properties v. Emmadine Farms, 282 App. Div. 1047; New York News Pub. Co. v. National S. S. Co., 148 N. Y. 39; Thorne Neale & Co. v. New York So. Coal Term. Corp., 270 App. Div. 816, affd. 295 N. Y. 977; Slotnick v. Klein, 280 App. Div. 984.)
I am, of course, aware of the rule that judgments should be rendered in accordance with the allegations and proofs of the parties, “ secondum allegata et probata.” In my opinion, however, this rule has no application in the case at bar. In McCarthy v. Troberg (275 App. Div. 139) where that rule was applied, the court pointed out that the plaintiff there had not made any request to conform the pleadings to the proof. Similarly, in Rosner v. U. S. Waterways Corp. (278 App. Div. 168, affd. 304 N. Y. 580) the motion to conform the pleadings to the proof was denied. Moreover, as indicated by the cases previously cited (e.g., Bialostok v. Wolfer, 191 Misc. 385, supra; Rodger v. Emigrant Ind. Sav. Bank, 258 App. Div. 614, supra)., the failure to conform the pleadings to the proof would not preclude a recovery in quantum meruit if warranted by the evidence.
Applying the principles outlined above to the evidence in this ease, it is my view and I find and decide that Grattan is entitled to recover of Amity the sums of $19,883.07 and $17,197.79 aforementioned (total $37,080.86) on the following theory: The evidence establishes that Grattan rendered services to Amity and Cantoni at their special instance and request, under circumstances which imply an agreement by Amity to pay therefor, and is entitled to be compensated therefor by Amity on a quantum meruit basis (inasmuch as Cantoni’s reductions in prices to Amity contemplated that Amity would pay for such services), and that the reasonable measure of such compensation, fixed by the parties themselves by their course of conduct, is 5% of the orders placed by Amity with Cantoni prior to August 7, 1953, even though some of such orders were filled subsequently.
As already noted, I have determined that Grattan is entitled to recover of Amity on a quantum meruit basis, compensation at the rate of 5% in respect of orders placed by Amity with Cantoni prior to August 7,1953, the date of Grattan’s discharge by Amity, although some of such orders were later filled. It is established law that an agent who renders services on a com *871 mission basis is entitled to commissions on orders procured prior to termination of the employment and filled subsequently, in the absence of an agreement to the contrary. (Dibble v. Dimick, 143 N. Y. 549; McCaskey v. Cumberland Glass Mfg. Co., 193 App. Div. 856, affd. 233 N. Y. 552; Bayer v. Oxford Univ. Press, 270 App. Div. 586, affd. 296 N. Y. 780; Mott v. Good Roads Mach. Co., 277 App. Div. 677; Maloney v. Jarco Metal Prods. Corp., 144 N. Y. S. 2d 128; cf. Sommer v. Ermold Co., 275 App. Div. 629.) I am unable to find an agreement to the contrary in this case.
If I am correct in the views here expressed and in the findings made with respect to Grattan’s right to recover from Amity, to the extent indicated, commissions on Amity’s purchases from Cantoni, then it may not be inappropriate to mention that further litigation between the parties may well be avoided. That any further litigation not thus avoided would be protracted and costly is evident from the trial history of this case. As already noted, the first trial, which had proceeded for approximately three weeks, was aborted by a declared mistrial. The second trial before this court consumed 24 trial days, including a number of late sessions. The trial minutes run to 2,668 pages; the trial exhibits are 550 in number; the trial and posttrial briefs (some of them printed) run to 670 pages.
Next in order for consideration are the commission claims of Grattan against Amity predicated upon purchases of silk shantung made by Grattan for Amity in 1952 and 1953 from Manifattura Sérica Piccinelli of Italy (herein referred to as “ Piccinelli ”). These claims are asserted in the first suit by Grattan solely against Amity and were pleaded in two causes of action, which were consolidated on trial into a single cause. Such Piccinelli purchases aggregate $143,461.27 and Grattan’s claimed commissions of 5% on such purchases would amount to $7,173.06, of which $2,000 was paid on account, leaving a balance of $5,173.06. I find and decide from the evidence that Grattan was entitled to recover this amount from Amity; that Grattan made the Piccinelli purchases for Amity upon the understanding between Grattan and Amity that Amity would pay Grattan a commission of 5% therefor, and that Amity has failed and refused to pay such commission. I further find and decide that the oral contractual arrangements between Grattan and Amity respecting the Piccinelli purchases were terminable at the will of either party and did not contemplate commissions on purchases made after termination of the employment, that the Piccinelli purchases here involved were made prior to such termination and that the Piccinelli commission claims are not barred by the *872 Statute of Frauds (Zupan v. Blumberg, 1 A D 2d 203, supra) or by any of the other defenses interposed by Amity in this case.
I find that Grattan has failed, by a fair preponderance of the credible evidence, to establish its cause of action against Amity for malicious and tortious interference with the alleged contractual relations between Grattan and Cantoni and accordingly that such cause of action should be dismissed. I base my decision not merely on the ground that Grattan has failed to establish the contractual relations with which it claims Amity has interfered, but as well upon the further ground that no tortious, malicious or wrongful acts on Amity’s part have been established.
Grattan’s cause of action against Amity and Cantoni for alleged conspiracy to cancel Grattan’s relationship with Cantoni and Amity and otherwise to injure and destroy Grattan’s business and earnings, was dismissed at the trial.
In passing upon the defenses and counterclaims, it is necessary to deal separately with each of the two actions consolidated into this action inasmuch as, as has already been pointed out, the pleadings were not consolidated.
The defenses and counterclaims interposed in the action brought by Grattan solely against Amity have been or are disposed of as follows: The first defense of the Statute of Frauds, predicated upon the contention that the oral contract sued upon was not to be performed within one year, is dismissed upon the grounds, first, that it is moot insofar as the Amity commission claim, as originally pleaded, is concerned; second, that it is not a bar to a recovery by Grattan against Amity in quantum meruit; and third, that it is not a bar to the recovery of the Piccinelli commissions, since the relationship between Grattan and Amity respecting the Piccinelli purchases was terminable at will by either party at any time and the contract could therefore be performed within one year. The second, third, fourth, fifth (partial), sixth, seventh and eighth defenses alleging, among other things, duality of loyalty, payment, failure of consideration, and interference with contractual relations, are dismissed upon the ground that they have not been established by a fail-preponderance of the credible evidence. The ninth defense and first counterclaim, seeking recovery of $250,000 and alleging, among other things, malicious publication of a certain advertisement in the New York Times, to Amity’s injury, and the tenth defense and second counterclaim, seeking recovery of $500,000 (including exemplary damages of $250,000) and alleging, among other things, defamation of Amity by reason of said advertisement, were dismissed, for failure of proof and other *873 reasons stated on the record, at the end of the ease. The eleventh defense and third counterclaim, seeking recovery of $500,000 (including exemplary damages of $250,000) which is predicated upon the alleged false and defamatory statement caused to be published by Grattan in the Women’s Wear Daily on November 9, 1953, is dismissed upon the ground that Amity has failed to establish the same by a fair preponderance of the credible evidence. The twelfth defense and fourth counterclaim, seeking recovery of $27,172.47 based upon Grattan’s alleged retention of moneys intended for an Italian resident agent, and the thirteenth (partial) defense predicated on the same facts, are dismissed on the ground that Amity has failed to establish the same by a fair preponderance of the credible evidence. The fourteenth defense and fifth counterclaim, seeking recovery of $116,314.21 based upon alleged duality of loyalty, and the fifteenth defense and sixth counterclaim, seeking recovery of $116,290.36 on the basis of the allegations of the fourteenth defense and fifth counterclaim, supplemented by charges of fraud, are dismissed on the ground that Amity has failed to establish the same by a fair preponderance of the credible evidence. The sixteenth defense, to the effect that Grattan had an accord and satisfaction with Cantoni which released Amity, and the seventeenth (partial) defense to the same effect, are dismissed on the ground that Amity has failed to establish the same by a fair preponderance of the credible evidence.
It may be noted that Amity’s posttrial briefs are silent on a number of its aforesaid defenses and counterclaims and do not request any affirmative judgment on its counterclaims, but merely dismissal of the complaints.
The defenses and counterclaims interposed in the action brought by Grattan against both Cantoni and Amity have been or are disposed of as follows: Amity’s first defense of good faith, lack of malice and privilege addressed to the cause of action charging it with tortious interference with Grattan’s contractual relationship with Cantoni, is dismissed as moot, inasmuch as the cause of action involved has been dismissed. Amity’s counterclaim charging Grattan with tortious interference with Amity’s relationship with Cantoni, seeking recovery of $500,000, was withdrawn at the end of the case. Cantoni’s first defense to the Cantoni commission claim, alleging the Statute of Frauds applicable to the debt, default or miscarriage of another person (Personal Property Law, § 31, subd. 2) is dismissed both as matter of law and upon the ground that it is moot, inasmuch as the Cantoni commission claim has been dismissed. Cantoni’s second defense to the Cantoni commission *874 claim, alleging the Statute of Frauds applicable to contracts not performable within one year (Personal Property Law, § 31, subd. 1) is dismissed upon the ground that it is moot, inasmuch as the Cantoni commission claim has been dismissed on the merits, Cantoni’s third, fourth and fifth defenses, and its sixth defense (added at the trial) to the Cantoni commission claim, alleging respectively, want of consideration, accord and satisfaction, payment, and frustration and failure of consideration, are dismissed, first, because they are moot inasmuch as the Cantoni commission claim has been dismissed, and second, because they have not been established by a fair preponderance of the credible evidence. Cantoni’s first and second counterclaims, which it was allowed on trial to plead as defenses as well, were withdrawn at the end of the trial.
To avoid extending this opinion beyond reasonable limits, the court considers it unnecessary to mention or discuss many of the factual matters and arguments presented at the trial and in the briefs. Each of them has been carefully considered and none of them has been overlooked.
All motions not heretofore disposed of are determined and disposed of in accordance with this opinion.
Plaintiffs shall have judgment against Amity Silk Corporation in the sum of $42,253.92. Under the circumstances of this case, I find that plaintiffs are entitled to interest from October 10, 1953, the date of commencement of the first action brought against Amity. (Civ. Prac. Act, § 480; Manufacturers Trust Co. v. Gray, 278 N. Y. 380; Aronowsky v. Goldberger-Raabin Co., 250 App. Div. 731; Freedman v. Hart & Early Co., 162 Misc. 487; High Quality Homes v. Palmer, 283 App. Div. 954.)
This constitutes the decision of the court in accordance with section 440 of the Civil Practice Act. Thirty days’ stay and 60 days to make a case.