Matthew M. Levy, J.
On occasion, the road to unwanted litigation — as may often be the case in respect of other undesirable destinations• — -is paved with good intentions. I am constrained to make this lugubrious observation because of what has occurred in the instant case.
The present parties intended in good faith to avoid what were deemed to be the labyrinthine and expensive paths of the law as administered in the civil courts of our State. They agreed, therefore, to submit a controversy between them to arbitration before their industry tribunal — as a simple and prompt solution of their commercial dispute. But, unfortunately, the result has been otherwise. Chronologically noted from the record before me, the procedures involved have included the following: invocation of the arbitration machinery; procurement by the arbitrators of written statements from all the parties; determination by the arbitral tribunal of lack of jurisdiction; appeal to the arbitration appeal board of the trade association involved; institution of an action in the Supreme Court to enjoin the arbitration appeal; application in the Supreme Court for an injunction pendente lite; argument thereon, and determination that the arbitration machinery (having been contracted for) be utilized and exhausted; appeal to the Appellate Division; argument and affirmance; arbitration hearings of 18 sessions; decision and award in arbitration; commencement of special proceeding in this court to confirm the award, and a cross application to vacate it; argument thereon; study thereof *260 and of all that has gone before. And here I must add — ¡ regretfully— that I am unable to decree finis to the litigious activities of the parties. For, in the light of the agreement between them, I must send the parties back to their chosen tribunal for the resolution of their controversy. And thus may begin another trek along the road that was constructed in good faith and was initially paved with the best of intentions.
Now, to the facts and the contentions.
The petitioner is a diamond broker. The respondents are diamond merchants. A diamond broker acts, usually, as an intermediary between the merchant who is an anxious seller and that merchant who is a hopeful buyer. The respondent Gutchen had an option to buy certain African Gold Coast raw diamonds. Authorizedly acting on Gutchen’s behalf, the petitioner interested the respondents Lipschutz and Gutwirth in the venture, and all of the respondents agreed to join forces in a business deal concerning the acquisition of an enterprise which would purchase and sell industrial diamonds produced on the Gold Coast. A dispute arose as to the petitioner’s remuneration — he sought a brokerage fee; the respondents were willing to compensate for work done only. The petitioner was recognized by all of the parties as having brought them together, and it was agreed that he was entitled to compensation. There was, however, no express agreement as to the amount.
The parties are members of the Diamond Trade Association of America, Inc. (formerly known as Diamond Center, Inc.), hereinafter referred to as Association. The controversy was tendered for arbitration upon a written submission dated February 3, 1954, and was to proceed under the by-laws of the Association. So much of the submission as is material to the present issue reads as follows: “ We hereby agree to submit to the arbitration under the By-Laws of the Diamond Center, Inc., the following controversy now existing between us.
“ Mr. Louis Dembitzer claims having been instrumental in bringing Messrs. Alex Gutchen, Isidore Lipschutz and Charles Gutwirth together in view of an important business deal.
‘ ‘ Mr. Dembitzer claims he was acting as broker and is entitled to a brokerage fee.
“ Messrs. Alex Gutchen, Isidore Lipschutz and Charles Gutwirth are only willing to compensate Mr. Dembitzer for work done in bringing the parties together.
< ‘ We further agree that the above controversy be submitted for decision to the Arbitration Chamber selected in accordance with the By-Laws of the Diamond Center, Inc.”
*261 The arbitration machinery is contained in article XI of the by-laws. Section 7 of that article provides that (except where the Association’s board of directors gives a release — a condition not here involved) all disputes of a commercial character arising out of or connected with the diamond business, must be submitted to and determined by the Arbitration Committee ”. The arbitration committee consists of eighteen members with a director of the Association acting as chairman. The committee is divided into chambers and an arbitration proceeds in the first instance before one such chamber, consisting of three members. Section C of article XI provides that a dissatisfied party may take an appeal to the arbitration appeal board (also composed of three persons), which board “ shall then hear the entire case, and shall have the same powers and authority with reference to this hearing as the Arbitration Chamber. * * * The Arbitration Appeal Board may either affirm, reverse, modify or amend the decision of the Arbitration Chamber or may make an entirely new decision and award * *
On July 20,1954, the arbitration chamber rendered its “ decision and award ”, that the “ claim of the plaintiff [Dembitzer, the petitioner herein] is hereby denied, but without prejudice, as to the rights of the respective parties as Ave find the present dispute is not within the jurisdiction of this Arbitration Board as not being within the accepted meaning and definition of a dispute ‘ arising out of and connected with the diamond business.’ ” The petitioner filed a notice of appeal to the Association’s arbitration appeal board. The respondents resisted that appeal by instituting an action in this court for a declaratory judgment and for an injunction. By that action, the respondents sought to stay the petitioner’s prosecution of the appeal in arbitration and for a judgment declaring that the petitioner had no right to appeal from the dismissal by the arbitration chamber; and that if he had such right the appeal board could not consider the matter de novo, but that since the chamber had found nonjurisdiction merely, the function of the appeal board Avould be limited to a revieAV solely of that question of jurisdiction, and that, in the event of a finding of jurisdiction under the by-laAvs of the Association, there be a remission of the matter to the chamber for further proceedings on the merits. The respondents brought on a motion in the lawsuit for a temporary injunction to restrain the prosecution of the arbitration appeal. The motion was denied at Special Term and on appeal the order of denial was affirmed (285 App. Div. 928). By the denial and affirmance the respondents in effect Avere directed to exhaust *262 their remedies in arbitration under the by-laws of the Association before resorting to the courts.
Accordingly, the parties and their counsel attended at numerous sessions of the arbitration appeal board, and proofs were received. There were 1,209 typewritten pages of record and 45 exhibits. On September 1,1955, there was a unanimous award by the appeal board in favor of the petitioner. The board in substance found that the petitioner is a diamond broker and was acting as a broker in this matter at the instance and with the consent of the respondents; that the dispute as to his compensation was of a commercial character arising out of the diamond business and among persons all of whom were members of the Association; that the petitioner had acted as a broker in bringing the respondents together for the purpose of acquiring a license for the purchase of industrial and other diamonds in the Gold Coast, and the commercial exploitation thereof; that such license was acquired; that the respondents have done a very large business thereunder since July, 1954; that the petitioner is entitled to compensation for the services rendered by him to the respondents; and that the fair and reasonable value of the services so rendered was $84,000, which was awarded in full settlement of all claims and demands made by the petitioner upon the respondents and of all controversies submitted for determination; and that the costs of the arbitration (in the sum of $3,625.50) were to be paid by the respondents.
The petitioner moved before me to confirm the award and that judgment be entered upon it. The respondents cross-moved for an order vacating the award, on the following grounds: 1. That the arbitrators exceeded their powers. 2. That the arbitrators refused to hear evidence pertinent and material to the controversy. 3. That the claim was barred by the Statute of Frauds. 4. That the award is contrary to law. 5. That the award is contrary to the by-laws of the Association. 6. That the award has no adequate or substantial basis in fact and could only have been reached as a result of prejudice.
It is plain that the sole grounds for a successful attack upon the award of an arbitration tribunal established by agreement of the parties are those specified in the statute (Civ. Prac. Act, art. 84); otherwise the award must be recognized by the courts as binding upon the parties (Raven Elec. Co. v. Linzer, 302 N. Y. 188). I shall therefore consider first the cross motion to vacate. And it is also plain that if none of the six grounds alleged for vacating the award is valid under the Civil Practice Act (§ 1462), then the motion to confirm must be granted (§ 1461). On the other hand, in the event that any one of these *263 grounds constitutes a legally permissible objection, and it is sustained, then the motion to confirm must be denied and the cross motion to vacate must be granted. Having come to the considered determination that two of the objections urged to the validity of the award are well founded, I shall not express my views as to the others. I have concluded that the award is vulnerable in these two respects: (A) That the powers of the arbitration appeal board were prescribed and limited hy the by-laws of the Association, and that the board in the circumstances of this case had no jurisdiction thereunder to determine the merits of the dispute; and (B) Assuming jurisdiction in the board to pass upon the merits of the controversy, the award is contrary to law in that the board exceeded its powers and so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. Both grounds for vacatur will now be separately considered.
(A) The respondents contend that the arbitration appeal board exceeded its powers as limited by the Association’s by-laws. As I have said, I am of the view that the point is well taken.
The personnel and the manner of selection of the two tribunals — lower chamber and appellate board — are not the same. And their functions are different. The submission provided that the ‘ ‘ controversy be submitted for decision to the Arbitration Chamber selected in accordance with the By-Laws of the ” Association, and the parties agreed "to submit to the arbitration under the By-Laws ” (italics supplied). The parties did not agree to render the board competent to pass upon the merits of the controversy. Although requested of the parties, no new submission was signed by them with reference to the appeal board. Assuming that the language of the submission also gave the appeal board certain jurisdiction in the premises, that jurisdiction was circumscribed Toy the by-laws of the Association. They provided that, upon an appeal to the board by any party dissatisfied with the “ decision and award ” of the chamber, the board “ shall then hear the entire case ” and it “ may either affirm, reverse, modify or amend the decision of the Arbitration Chamber or may make an entirely new decision and award ’ ’. (Italics supplied.)
In my view, it is of the very essence of an arbitration ‘ ‘ award ’ ’ that there be a substantive determination on the merits, and that it be final and definitive. Here, there was a denial of the claim, but not on the merits. This was not a final disposition of the dispute between the parties. It was but a decision, made expressly without prejudice to the rights of either party, upon *264 the ground that the arbitration tribunal concluded that it had no jurisdiction to hear and determine the dispute. That is not truly an award. And that is so, even though the chamber said that it was making a ‘ ‘ decision and award ’ ’. Calling something what it isn’t, doesn’t make it so. I hold that the appeal board could give no ‘ ‘ new ’ ’ award, since there was no old award.
As established by the Association, the arbitral scheme involved here envisages a hearing on the merits in the first instance before the chamber, and (upon an appeal from the chamber’s award) a second hearing before the appeal board. The holding of the two hearings is a matter of substance, and a determination on the merits in the lower tribunal is also a matter of substance. The appeal board has power under the by-laws to affirm the decision below or to modify it. That means, it seems to me, that there must be some award below upon which the appellate tribunal might operate — and, if so inclined, give some appropriate weight to it. For the appeal board, therefore, to have made (as it did) a determination not only that there was jurisdiction, but also to have rendered a de novo award on the merits, has deprived the losing party of the substantial rights of having a hearing on the merits in the first instance in the lower tribunal, and of having an opportunity of urging the appeal board to adopt as its own the determination on the merits made by the lower tribunal.
The point is not res judicata. The denial of an application for temporary relief is not generally determinative of the issues in the action. And here, particularly, the refusal to grant the injunction pendente lite turned upon the well-recognized principle that the parties would have to exhaust their remedies within the Association before they could urge the court to act. “ The parties, having selected their own method of determining their dispute, are bound by the methods and procedure of the association whose manner of arbitration they have agreed to abide by.” (Dineen, J., in Gutchen v. Dembitser, N. Y. L. J., Jan. 25, 1955, p. 7, col. 5, affd. 285 App. Div. 928.) My learned colleague recognized, of course, that the arbitration appeal board had certain powers in the premises. He did not spell out those powers at Special Term, nor was it deemed necessary to do so in the Appellate Division. That was not then required, when all that was involved was the denial of the interim stay prayed for. I deem it necessary for me, however, on this application, to indicate the limits of the appeal board’s powers — and that I do. In my view, the board could have done only one of two things when the appeal was taken to it — to have agreed with the chamber that there was no jurisdiction; or, holding *265 that there was jurisdiction, to have sent the case hack to the chamber to hear the facts and to render an award on the merits. Upon concluding that there was jurisdiction in the lower chamber and then presuming itself to determine the case on the merits, the board transcended its authority and rendered its award in that respect nugatory.
Nothing that occurred at the hearings before the appeal board expanded the board’s authority. As I read the stenographic minutes of the hearings before, the board, and the exhibits received in evidence, it was not inappropriate for the board and the parties to have gone into all of the facts, so that the board might be able to determine the matter of the chamber’s jurisdiction — in the light of the decision of the chamber that the dispute was not within its jurisdiction because it was not one “ arising out of and connected with the diamond business The petitioner quotes from the transcript of the final hearing, as follows:
“ The Chairman: * * *
‘ We, the Panel of Arbitration, have not reached any decision up to this time. As we read your submission of both sides, we gather that it is the intention of the parties that in arriving at an award and in evaluating all matters which required evaluation, we, the Arbitrators, should consider our experience as merchants and diamond merchants, along with other evidence which was brought out by the two parties, as I say, in arriving at the decision.
“ I hope both parties agree to that and that this was your wish.
“ Mr. Finley: Naturally.
“ Mr. Crowley: Tes.”
Upon close examination I find nothing in this colloquy that in one iota changes in any respect the breadth or depth of the submission and the scope of the board’s power. There was nothing here which would warrant the board in submerging the submission or enable it to by-pass the by-laws.
(B) The respondents contend that the arbitration appeal board exceeded or imperfectly executed its powers, as limited by the statute. As I have said, I find that this point, too, is well taken. In my view, the required mutual, final and definite award was not rendered (Civ. Prae. Act, § 1462, subd. 4). I shall endeavor to explain why I think so.
In view of the respective claims of the parties as stated in the submission, there was presented to the arbitration tribunal the basic question — did the petitioner act as a broker, entitling *266 Mm to compensation in the sum of a brokerage commission to be fixed on the basis of a percentage of business done by the respondents in this project; or did the petitioner render services entitling him to compensation to be fixed on the basis of work done by the petitioner? If the petitioner were unable to prove that the agreement of hiring contemplated a brokerage commission, he could recover for the value of the service rendered (cf. Spring v. Moncrieff, 208 Misc. 671, 676). But the respondents could not be held both ways, and there are fundamental differences between the two. I shall mention two of them.
(1) If brokerage is the functional compensation, it matters not how simple or how complex was the effort which produced the petitioner’s beneficial outcome; it is not service which is compensated, but the result and the result alone. On the other hand, if the claim is based on quantum meruit, both work and success are relevant. (2) If the petitioner were entitled to brokerage, he would receive the determined percentage based upon the result of the association of the respondents and their exploitation of the license and of its renewals. While he need not await termination of the association or cessation of the exploitation at some indefinite time in the future, he would become entitled to an award for the commissions earned and demandable up to the time of the arbitration only. That would not be final or conclusive or preclusionary in any way with respect to continued exploitation, and with respect to the percentage commission demandable as a consequence, for the period following the time of the submission of the present controversy. On the other hand, a finding that the petitioner is entitled to a quantum meruit compensation (or the reasonable value of the services rendered in bringing the opportunity and the parties together) concerns a single, complete transaction, the remuneration to be founded and fixed upon a rational basis, in order to afford to the petitioner the full and final compensation to which he is entitled with respect to past and prospective business brought by his efforts to the respondents.
Actually, there was only one controversy submitted, and the fact that it was stated on the one side that the petitioner was a broker and on the other side that he was the renderer of service, does not make the controversy multiple. The arbitration tribunal was not authorized to strike some balance between the claims, but rather to award upon one or the other. Notwithstanding tMs, the board found both that the petitioner was “ acting as a broker ” and that he was “ entitled to compensation for the services rendered ”. Thus, the award seems to have sustained the petitioner’s contention that he was a broker — *267 and if so, a commission would then follow as a necessary sequence. Yet, it may be, from the language contained in the award, that the contention of the respondents was also sustained — in that the petitioner was held not entitled to a brokerage fee, but to quantum meruit only. Or it may even be (from the wording of the award) that the arbitrators came to the conclusion that the petitioner is entitled to recover on both theories, or partly on one and partly on the other. On this submission that cannot validly be. This dual finding, in the circumstances here, is an inconsistent commingling of brokerage and quantum meruit, which, in my view, makes for imperfect execution of power.
And the result is, too, that there is no finality and mutuality in this award. From the four corners of this award, it cannot be determined whether in fact the petitioner has or has not further claim. It is no answer that the arbitrators have stated in their award that it is in “ full settlement of all claims and demands made by him [the petitioner] upon them [the respondents] herein and of all controversies submitted to our determination. ” For, insofar as the petitioner’s claims are concerned, they related to brokerage only. If the award was intended to be a settlement of other “claims and demands” and “controversies ”, it went beyond the scope of the submission.
I am not now concerned with the amount of the award as such, although the respondents have urged quite strenuously that when the arbitrators awarded the petitioner the sum of $84,000, rather than $8,400, the award was grossly excessive, and in support of their argument the respondents point out: that the trade rules (which were adopted by the Association, are included in the pamphlet containing the by-laws, and are stated to represent the accepted customs of the diamond trade) provide in article "VTII, with reference to “ Brokerage Commission ”, that “ [u]nless otherwise specifically agreed upon, the brokerage fee shall be 1% ”; that there was no special agreement in this case as to the amount of compensation; that the submission presented the petitioner’s claim that “ he was acting as a broker and is entitled to a brokerage fee ’ ’; that the brokerage fee is limited to 1%; that it having been determined by the arbitrators that the petitioner acted as a broker, they could award him as commissions no more than 1% of the sales to the date of the arbitration; that total sales were in the sum of $830,401 during the period July 1, 1954, to April, 1955; that 1% thereof comes to $8,400 in round figures; and that therefore, as the award of $84,000 is 10 times that amount, it was necessarily beyond the powers of the arbitrators.
*268 In that regard let me say that the petitioner asked for a brokerage commission in the submission; also, in the submission, the respondents in effect conceded liability, but only for work done and to the extent of the value of the petitioner’s services. Doubtless, the petitioner sought the larger remuneration (which he claimed to be brokerage); and doubtless, too, the respondents would be likely to concede the smallest amount possible (which they thought would be for services rendered). I cannot hold that, as a matter of law, the arbitrators were not within their powers, if they came to the conclusion — on the evidence in this case — that the commission for brokerage here could be larger than compensation for work done. Also, while, under the trade rules, brokerage is limited to 1%, the rules do not specify what the base will be. Since it was within the power of the board (assuming jurisdiction) to find that the petitioner was a broker, it would seem to me to be reasonable to have the board determine the value of the transactions for which the petitioner is entitled to commissions. And, as the submission in effect called upon the arbitrators to determine the amount of the commissions payable to the broker, they could (within the terms of the submission) figure the commissions on the reasonably estimated business of the respondents obtained through the efforts of the petitioner.
There is also much dispute and discussion in the record and the briefs as to whether the petitioner was to bring the respondents together for the purpose of exploiting a license to be secured from the Gold Coast Government, or whether the object of the enterprise for which the respondents were to be brought together was to secure a monopoly; and upon other items of evidence — such as that the respondents invested a large amount of capital in the venture; that to date only terminable licenses have been obtained, in competition with other firms; upon the probabilities of the respondents’ gaining a monopoly; upon the possibility that the license would be terminated by the Gold Coast Government; upon the likelihood of loss to the respondents in that event; upon the likelihood that the value of respondents’ business would be very substantial if their license ripened into the hoped-for monopoly; and upon the estimated earnings of the business either way.
However, in my view of the case, at its present posture, none of this matters, for any determination upon this branch of the controversy would not be reviewable in any way. The nature of the proof of the recoverable amount of one’s claim in an arbitration proceeding is not governed by the rules of law held applicable by and as administered in a court action. Matter *269 of Marchant v. Mead-Morrison Mfg. Co. (252 N. Y. 284) cited by the respondents, is of no aid to them. The case holds, of course, that an award beyond the terms of the submission is void, but it also determines (p. 302) that “ [t]he judgment of the arbitrators within the lines of the submission is not to be impeached for misconception of the law.” (See Matter of Nadalen Mills [Barbizon Knitwear Corp.], 206 Misc. 757, 758.) The statements concerning these angles of the dispute should not be allowed to intrude upon or confuse us with respect to that limited question now being considered, which is: — What did the board do in fixing compensation? Did the board find that the brokerage commissions were not 1%, but more? Or did the board find that the brokerage fee was 1%, but included in its base of computation an estimate of all future business, and thus arrived at the sum of $84,000 as the appropriate commission? Or did the board find that the petitioner was entitled to a brokerage commission as to the claim up to submission, and thus entitled him to lay claim as to future fees? Or did the board find that the petitioner was entitled to quantum meruit, and fixed the full and final value at $84,000? Or did the board mix the inquiries and the answers, and arrive at its determination accordingly? The award does not tell us. We are thus left with an award without fixation of the proper compensation, or with an attempted fixation of compensation which is not within the scope of the submission, or which is not final and mutual. In any case, the powers of the board were thus exceeded or imperfectly executed.
I conclude that the motion to confirm should be denied, and that the cross motion to vacate should be granted (on each of the grounds hereinbefore specified as “A” and “ B ”) to the extent of remanding the matter to the arbitration chamber for a hearing and determination on the merits. Settle one order, consolidating both motions and reciting all the papers accordingly.